IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DIVISION OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PFG VENTURES, L.P. | ) | CASE NO.: |
| 8800 East Pleasant Valley Rd. | ) | |
| Cleveland, Ohio 44131 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | **VERIFIED COMPLAINT** |
| v. | ) | |
| | ) | |
| BRANDON C. KENNEDY | ) | |
| 515 W. Balboa Boulevard | ) | |
| Newport Beach, California 92661, | ) | |
| | ) | |
| BKEN, INC. | ) | |
| d/b/a BRANDCO. MARKETING | ) | |
| 6600 District Boulevard | ) | |
| Bakersfield, California 93313, | ) | |
| | ) | |
| CHRISTINA L. KENNEDY | ) | |
| 515 W. Balboa Boulevard | ) | |
| Newport Beach, California  92661, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMERICAN BUSINESS PROMOTIONS | ) | |
| d/b/a AMERICAN SOLUTIONS FOR | ) | |
| BUSINESS | ) | |
| 31 East Minnesota Ave. | ) | |
| Glenwood, Minnesota 56334 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff PFG Ventures, L.P. d/b/a Proforma ("PFG"), for its Amended Verified Complaint

against Defendants BKEN, Inc. d/b/a BrandCo Marketing ("BKEN"), Brandon C. Kennedy,

Christina L. Kennedy, and American Business Promotions, d/b/a/ American Solutions for

Business, Inc. ("ASB") alleges as follows:

**INTRODUCTORY STATEMENT**

1.      This is an action for ASB's misappropriation of PFG's trade secrets and Defendants Brandon Kennedy, BKEN and ASB conspiring to tortiously interfere with PFG's business and contractual relationships resulting in unfair competition. Additionally, BKEN, Brandon Kennedy and Christina Kennedy have breached the Franchise Agreement they entered into with PFG.

2.      Plaintiff PFG is the owner of the Proforma® franchise system, which sells promotional products, commercial printing, printed apparel, point-of-purchase displays, multi-media services, and related business supplies. Since 2004, Defendant BKEN or its predecessor has been a franchisee of the Proforma system. The most recent franchise agreement between PFG and BKEN was entered into in February 2014. Defendants Brandon and Christina Kennedy personally guaranteed the performance of BKEN's obligations under the 2014 Franchise Agreement, as they had under the previous agreement.

3.      PFG has developed a unique and proprietary system for the establishment of its franchisees, information that is highly protected as confidential information and trade secrets.

4.      In contrast to many franchise agreements, which require the franchisee to operate the franchised business for the entire fixed term of the agreement, the Proforma agreement allows the franchisee to terminate the franchise agreement voluntarily at any time, with notice and on specified conditions. On or about June 4, 2021, BKEN gave notice to PFG through counsel that it was terminating the 2014 Franchise Agreement. This action, and BKEN's decision to continue to do business with clients who had been acquired during BKEN's long tenure as a Proforma franchisee, triggered BKEN's obligation to pay an "Account Acquisition Fee" calculated pursuant to an agreed formula specified in the Franchise Agreement. According

2

to the formula, which is based upon average service fees payable for the twenty-four months preceding termination, BKEN owed PFG $557,853.16. BKEN has failed and refused to pay this amount as required. However, PFG has been able to recover $270,857.78 of the amount owed by BKEN from payments that PFG has received from customers. Accordingly, the net amount currently due, as of the date of this filing, is $286,995.38plus applicable interest. BKEN is liable for this amount under the 2014 Franchise Agreement. Defendants Brandon Kennedy and Christina Kennedy are also jointly and severally liable for this amount under the Guaranties that they signed. Brandon Kennedy, Christina Kennedy, and BKEN also are liable for PFG's reasonable attorneys' fees and costs pursuant to the terms of the 2014 Franchise Agreements and the Personal Guaranties.

5.      Upon information and belief, BKEN, Brandon Kennedy became affiliated with ASB during or after his termination with PFG.

6.      ASB is a direct competitor of PFG.

7.      Only recently has PFG learned of the motive behind BKEN, Brandon Kennedy's departure and refusal to pay the Account Acquisition fee and how those actions are connected to Brandon Kennedy, BKEN, and ASB conspiring to tortiously interfere with PFG's contractual agreements with its Franchise Owners and contractual and business relationships with its customers and vendors, all while ASB is engaging in an ongoing pattern of unfair competition through misappropriating PFG's trade secrets in an effort to circumvent legitimate and fair competition.

8.      As a result, this action seeks damages, reasonable attorneys' fees and costs, and preliminary and permanent injunctive relief for ASB's misappropriation and use of PFG's trade secrets, confidential information, and property, and ASB, Brandon Kennedy, and BKEN's unfair

competition, civil conspiracy, tortious interference with PFG's business and contractual relations, and replevin. Additionally this action seeks damages for BKEN, Brandon Kennedy, and Christina Kennedy's breach of the Franchise Agreement with PFG.

## THE PARTIES

9.      Plaintiff PFG Ventures, L.P. is a limited partnership existing under the laws of the State of Ohio with its principal place of business in Cleveland, Ohio.

10.     Defendant BKEN, Inc. is a California corporation with its principal place of business in Bakersfield, California. Upon information and belief, BKEN, Inc. is affiliated with ASB, conducts business in Ohio, and is a direct competitor of PFG.

11.     Defendant Brandon C. Kennedy is an individual who resides in Newport Beach, California. Upon information and belief, Brandon C. Kennedy is affiliated with ASB and conducts business in Ohio in direct competition with PFG.

12.     Defendant Christina L. Kennedy is an individual who resides in Newport Beach, California.

13.     Defendant ASB is a Minnesota corporation with its principal place of business in Glenwood, Minnesota. ASB is a direct competitor of PFG and conducts business in Ohio.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

15.     Jurisdiction and venue are proper in this Court because the breach of contract claim arises out of the contract between PFG and BKEN, Brandon C. Kennedy, and Christina L. Kennedy in which the parties agreed that claims may be brought in this Court. Additionally,

Plaintiff PFG is headquartered in Cleveland, Ohio, and the contracts at issue were accepted by PFG in Ohio. This Court has personal jurisdiction over BKEN, Brandon C. Kennedy, and Christina L. Kennedy pursuant to ORC 2307.382.

16.     Further, this Court has personal jurisdiction over ASB, BKEN and Brandon C. Kennedy for the tort claims pursuant to Ohio's long arm statute, ORC 2307.382, because ASB, BKEN, and Brandon C. Kennedy conduct business in Ohio, contract to supply services in Ohio, and caused tortious injury to PFG in Ohio and regularly conduct or solicit business in Ohio, engage in other persistent course of conduct in Ohio, and derive substantial revenue from services rendered in Ohio.

17.     Venue is further proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because, under the statute, ASB and BKEN reside within the judicial district as they are subject to this Court's personal jurisdiction. Venue is further proper with respect to Brandon C. Kennedy pursuant to 28 U.S.C. § 1391(b)(2).

## BACKGROUND FACTS

**PFG is a Global Marketing Franchisor**

18.     PFG is the franchisor of a business designed to sell promotional products, commercial printing, printed apparel, point-of-purchase displays, multi-media services, and related business supplies using a proprietary system of doing business (the "Proforma System"). PFG also is the owner of various trademarks related to its business (the "Proforma Marks") that it licenses to its franchisees. In addition, PFG has a significant network of vendors that it works with, that has taken decades to create, and inter alia, separates it from its competitors in this industry.

**PFG Protects Its Proprietary and Confidential Information**

19.     PFG enters into Franchise Agreements (the "Franchise Agreement") with Franchise Owners. The Franchise Agreement contains a confidentiality provision preventing Franchise Owners and their employees from disclosing trade secrets and confidential information from PFG's System.

20.     The Franchise Agreement states, among other things, that PFG's "Confidential Operations Manual," the "Proforma System," the training materials, among other items contain "trade secrets and confidential information which we have developed at considerable expense and which we own."

21.     The Franchise Agreement also contains covenants mandating that during the term of the Franchise Agreement, Franchise Owners shall not engage in any business similar to the Franchised Business without prior written approval, shall devote their full-time and best efforts to the operation of the Franchised Business unless prior written approval is received, and shall not divert or attempt to divert any business or any actual or potential customers of PFG or other Franchise Owners to any competitive business ("competition covenants").

22.     PFG also enters into a Master Software Agreement with Franchise Owners that includes a confidentiality provision where the Franchise Owner agrees to maintain the confidentiality of and not disclose any confidential information and trade secrets of PFG.

**Franchise Agreement Between PFG and Defendants BKEN, Brandon Kennedy, and Christina Kennedy**

23.     On February 2, 2004, Brandon Kennedy d/b/a Proforma Solutions Provider entered into a franchise agreement (the "2004 Franchise Agreement") whereby PFG, as franchisor, and Brandon Kennedy, as franchisee, agreed that Brandon Kennedy would use the Proforma Marks and Proforma System in the operation of a business on specified terms and

conditions, including maintaining confidentiality. The 2004 Franchise Agreement had a ten-year term. Although he signed the franchise agreement as an individual, Brandon Kennedy also personally guaranteed his obligations as a franchisee in a "Guaranty of Franchise Owner's Undertakings" that he and Christina L. Corrigan (later Christina Kennedy) both signed. Brandon Kennedy and Christina Corrigan signed similar Guaranties in 2011 in connection with amendments to the 2004 Franchise Agreement.

24.     On February 14, 2014, PFG and BKEN, then doing business as Proforma Progressive Marketing, entered into a Franchise Agreement (the "2014 Franchise Agreement") whereby PFG, as franchisor, and BKEN, as franchisee, agreed that BKEN would use the Proforma Marks and Proforma System in the operation of a business on specified terms and conditions, again including confidentiality. A true and correct copy of the 2014 Franchise Agreement is attached hereto and incorporated herein by this reference as Exhibit A. When executed, the 2014 Franchise Agreement superseded the 2004 Agreement.

25.     On February 14, 2014, in connection with the execution of the 2014 Franchise Agreement, Brandon Kennedy and Christina Kennedy (together, the "Guarantors") each signed a Guaranty of Franchise Owner's Undertakings whereby the Guarantors each guaranteed the performance of all of BKEN's obligations in the 2014 Franchise Agreement.

26.     The 2014 Franchise Agreement was amended by agreement on February 14, 2014, December 27, 2019, and March 9, 2021. The Guarantors signed a Guaranty of Franchise Owner's Obligations on each of these occasions.

27.     Most recently, on March 9, 2021, in conjunction with an amendment of the 2014 Franchise Agreement signed on that date, the Guarantors each signed a Guaranty of Franchise Owner's Undertakings (the "2021 Guaranties") whereby the Guarantors each guaranteed the

performance of BKEN's obligations set forth in the 2014 Franchise Agreement and all other agreements with PFG. True and correct copies of the 2021 Guaranties as signed by Brandon Kennedy and Christina Kennedy are attached hereto and incorporated herein by this reference as Exhibit B.

**Training and Assistance Provided to Kenney**

28.     As a PFG Franchise Owner, Brandon Kennedy was provided significant training and assistance for his franchise business. Ex. A, p. 2.

29.     In addition to being a franchise owner, Brandon Kennedy was part of PFG's franchise advisory council in which he had access to strategic planning, vision, and thinking of PFG as well as open lines of communication to owners across the PFG network. He also served on the technology committee, which gave him access to the same information as the council, in addition to design, workflow, features, functions, data points, reporting, and many other functions and systems for PFG's $20 million business management system.

30.     As a former PFG Franchise Owner and through his involvement with PFG's franchise advisory council, Brandon Kennedy has knowledge and is aware that PFG's Franchise Owners are in contract with PFG through franchise agreements.

31.     As a result of the training and mentorship, as well as access to account referrals, acquisitions, sales professionals, the support center, and vendors, Brandon Kennedy became a very successful franchise owner for PFG.

32.     Also in his role as a Franchise Owner, he had access to training materials, business plans, vendor lists, pricing information, marketing and business development tools, resources and initiatives, financial information, including but not limited to the sales and

marketing fund, and other files and systems that contained confidential and proprietary information.

33.     While Brandon Kennedy was authorized to use the confidential and proprietary information in the normal course of his role as a Franchise Owner for PFG, he was not entitled to use that information for the benefit of a competitor of PFG.

**Termination Rights and Obligations**

34.     Unlike many franchise agreements, which require the franchisee to operate the franchised business through an entire fixed term of the franchise agreement, the Proforma franchise agreements allowed the franchisee to terminate the agreements without cause on specified terms and conditions. Section 13(f) of the operative 2014 Franchise Agreement provided that BKEN could terminate the Agreement "without cause by giving [PFG] at least 60 days prior written notice." Ex. A, p. 8.

35.     The parties agreed that in the event of termination by BKEN, BKEN was obligated to pay PFG all amounts owed to PFG. *Id.* The parties also agreed that if BKEN "desire[d] to service any or all of the accounts not listed on Schedule 1" of the Agreement, then BKEN was obligated to pay an Account Acquisition Fee. *Id.* The parties specified that the Account Acquisition Fee would be "an amount equal to 24 times the average monthly service fee [BKEN] owed [PFG] during the most recent 24 months of the Agreement . . . on all sales to all customers which are not listed on . . . Schedule 1." *Id.* Schedule 1 to the 2014 Franchise Agreement, which was separately signed by Brandon Kennedy, did not identify any pre-existing accounts that would be excluded from the Account Acquisition Fee. Ex. A, p. v.

36.     Further, unless the Account Acquisition Fee is paid, for one year after the agreement terminates, the Franchise Owner "will not contact for the purpose of selling any

product or service similar to any Products or Services, any person or organization which was, at any time during the two-year period prior to such termination, a customer to which you sold Products or Services, or which you know is a customer of a franchise owner using proprietary information gained while in our system." Ex. A, p. 5. Additionally, the Franchise Owner "will not contact any vendor or supplier of the Franchised Business for the purpose of buying the Products or Services on behalf of any third party." *Id.*

### **Breaches By BKEN And The Guarantors**

37.     Brandon Kennedy and BKEN operated their Proforma business under the 2004 Franchise Agreement and the subsequent 2014 Franchise Agreement for a total of more than seventeen years, generating significant revenues and profits in the process. On June 4, 2021, however, through counsel, BKEN delivered a notice (the "Notice") terminating the 2014 Franchise Agreement, effective August 3, 2021. A true and correct copy of the Notice is attached hereto and incorporated by this reference as Exhibit C.

38.     The June 4, 2021 Notice specified that Brandon Kennedy "wishe[d] to retain his [Proforma] clients and continue to do business with them." *Id.* As the Notice acknowledged, this triggered BKEN's obligation to pay the Account Acquisition Fee pursuant to Section 13(f) of the 2014 Franchise Agreement. *Id.* While Section 13(f) of the 2014 Franchise Agreement stated certain conditions on which the obligation to pay the Account Acquisition Fee could be waived, BKEN and the Guarantors did not attempt to satisfy and have not satisfied those conditions. Accordingly, the Account Acquisition Fee is due and owing to PFG.

39.     Under Section 13(f) of the 2014 Franchise Agreement, the Account Acquisition Fee is calculated as "24 times the average monthly service fee [the franchisee] owed [PFG] during the most recent 24 months of the Agreement." Ex. A, p. 8. The average monthly service

fee owed by BKEN to PFG over the most recent twenty-four months of the Agreement was $23,243.88. Accordingly, the Account Acquisition Fee due from BKEN is $557,853.16. BKEN's Notice acknowledged that BKEN owed PFG the Account Acquisition Fee, but urged PFG to accept a payment of $150,000.00 instead of the full $557,853.16 that was due. Although PFG provided BKEN with a detailed explanation of the amount owed, BKEN has failed and refused to pay the contractually specified amount. This failure constitutes a breach of the 2014 Franchise Agreement.

40.     As a result of the failure to pay the Account Acquisition Fee in full, BKEN and the Guarantors are barred, for one year following the termination of the 2014 Franchise Agreement, or through August 3, 2022, from contacting, for the purpose of selling any product or service similar to any Products or Services of PFG, any person or organization which was, at any time during the two-year period prior to such termination, a customer to which you sold Products or Services, or which you know is a customer of a franchise owner using proprietary information gained while in the PFG system. Additionally, Guarantors are barred through August 3, 2022 from contacting any PFG vendor or supplier of PFG for the purpose of buying products or services on behalf of a third party.

41.     Upon information and belief, Brandon Kennedy, individually or through BKEN or ASB, contacted PFG customers in violation of his contractual obligations to PFG for purposes of offering BKEN products or services for the benefit of BKEN and ASB. Additionally, upon information and belief, Brandon Kennedy, individually or through BKEN or ASB, contacted PFG vendors in violation of his contractual obligations to PFG for purposes of buying products or services for BKEN or ASB for the benefit of BKEN and ASB. These actions constitute breaches of the 2014 Franchise Agreement.

11

42.     Specifically, on or around August 10, 2021, a representative of BKEN, Maria Martino, emailed a PFG customer informing the customer to place all new orders with "BrandCo Marketing" using ASB accounting details as BrandCo Marketing has become partnered with "ASB." Upon information and belief, Brandon Kennedy was indirectly involved in contacting this customer, and other PFG customers as well which he and BKEN knew or had reason to know are PFG customers. These actions further constitute breaches of the 2014 Franchise Agreement.

43.     Under the Proforma System, payments from customers are received by PFG, which deducts contractually authorized service and other fees prior to transmitting the balance to the franchisee. *See* Ex. A, p. 5. Since receiving notice of BKEN's termination of the 2014 Franchise Agreement, PFG has received and retained $270,857.78. This amount is properly set off against the amounts owing to PFG for the Account Acquisition Fee. Accordingly, the total presently owing to PFG for the Account Acquisition Fee is $286,995.38 BKEN may owe additional amounts for service fees and other obligations related to the wind-down of its Proforma business.

44.     Pursuant to the 2021 Guaranties, the Guarantors guaranteed BKEN's performance under the 2014 Franchise Agreement, including the obligation to pay the Account Acquisition Fee, without separate notice or demand to them. *See* Ex. B. The Guarantors also have failed to pay the Account Acquisition Fee in the amount specified above. This failure constitutes a breach of the Guaranties.

45.     Section 19(b) of the 2014 Franchise Agreement provides that, in the event of litigation to enforce the Agreement, the prevailing party shall be entitled to costs, including court costs and reasonable attorney's fees. *See* Ex. A, p. 9.

46. The 2021 Guaranties provide that each Guarantor "agree[s] to pay [PFG's] expenses of enforcing the Agreement(s) against the Obligor [BKEN] and this Guaranty . . . .These expenses will include [PFG's] reasonable attorneys' fees if [PFG] hire[s] an attorney to enforce the [Franchise] Agreement or this Guaranty." *See* Ex. B.

47. Based upon the foregoing provisions of the 2014 Franchise Agreement and the Guaranties, BKEN and the Guarantors are liable for PFG's reasonable attorneys' fees and costs incurred in attempting to collect the amounts owed. These amounts continue to accrue.

**Additional PFG Franchise Owners Depart PFG, Raising Suspicion**

48. Shortly after Brandon Kennedy's departure, two additional Franchise Owners terminated their Franchise Agreements with PFG and upon information and belief have gone to ASB or an affiliate of ASB. Then in the weeks that followed, PFG learned additional Franchise Owners may be considering a departure and moving to ASB or an affiliate of ASB.

49. The timing and number of actual and contemplated departures raised suspicions within PFG.

50. And then in mid-June 2022, a payment was received for a customer, for which PFG did not have an open invoice. PFG investigated and confronted the involved persons and it appeared the order was processed through ASB for a current Franchise Owner of PFG. At this time, PFG's suspicions only increased.

51. To see if it could determine if something nefarious was occurring, PFG ran cursory internal e-mail searches on a number of the suspected Franchise Owners' work e-mail accounts.

52. By doing so, PFG discovered communications indicating that, rather than fairly competing with PFG, ASB together with Brandon Kennedy and BKEN were embarked on a

strategy to unfairly compete with PGF by interfering with PFG's contracts and economic interest, soliciting PFG's Franchise Owners, and inducing Franchise Owner(s) to disclose  PFG's trade secrets, confidential information, and property to ASB.

53.   Specifically, the cursory search of PFG emails uncovered that ASB, with the assistance of Brandon Kennedy, BKEN, and others, has for some time consistently and repeatedly improperly interfered with or attempted to interfere with PFG's contractual and business relationships. For example:

    a.    In or around November 2021, affiliates of ASB, including members of ASB's leadership team, Larry Zavadil, Justin Zavadil, and Dana Zezzo scheduled a meeting with one of PFG's Franchise Owner for introductions and to answer questions about ASB. Greg Nelson, ASB's Director of Acquisitions and Transitions, and Larry Zavadil set up demonstrations for the PFG Franchise Owner before he traveled to Glenwood, Minnesota for a full demonstration.

    b.    PFG's Franchise Owner responded to Larry Zavadil indicating he is going to "stay put" at PFG as he is unable to financially handle the buyout set forth in the Franchise Agreement. Larry Zavadil offered to help and stated that he has a "work around" that he has used for non-compete contract solutions.

    c.    In or around April 2022, Brandon Kennedy connected a PFG Franchise Owner with Larry Zavadil. The PFG Franchise Owner expressed hesitation about the prospect of leaving PFG and Larry Zavadil responded that "we are here to help."

    d.    On May 25, 2022, Larry Zavadil responded to an email from a PFG Franchise Owner saying he would fit into the "American family perfectly."

    e.    In or around June 2022, Larry Zavadil sent another Microsoft Teams meeting invitation to this Franchise Owner.

    f.    On June 10 2022, Larry Zavadil copied two individual PFG franchise owners stating, "it appears PFG is up to something with [PFG's Franchise Owners' names] franchises. Can you set up a time as soon as possible to get them transitioned to ASB? There now is a huge sense of urgency. Let me know how I can help."

14

**PFG Discovers the Disclosure of Confidential and Proprietary Information**

54.     The context in which the solicitations discussed above is critical, as PFG has uncovered the significant exporting of PFG's information by Brandon Kennedy and others just prior to their departures from PFG and their joining ASB. A forensic investigation will be necessary to fully determine the specifics of exactly what was taken by these individuals

55.     In addition, the email communications that PFG has recently uncovered show that ASB, with the assistance of BKEN and Brandon Kennedy, is misappropriating PFG's trade secrets to aid it in shifting PFG business to ASB and, by doing so, is tortiously interfering with PFG's business and contractual relationships with its Franchise Owners and its customers and vendors, all in an effort to short-circuited the extensive time and expense that would have otherwise been required to compete through legitimate and fair competition.

56.     As just one example, an email thread uncovered just days ago shows that Brandon Kennedy connected a current PFG Franchise Owner ("The PFG Franchise Owner") with Greg Nelson, again ASB's Director of Acquisitions and Transitions.

57.     The e-mail thread also shows that on April 20, 2022 at 10:46 a.m. The PFG Franchise Owner told Greg Nelson to call at 11 a.m.

58.     Upon information and belief, The Franchise Owner and Greg Nelson spoke at or around 11 a.m. on April 20, 2022 on Microsoft Teams or by phone.

59.     Thereafter, at 11:28 a.m., through the same e-mail thread, The PFG Franchise Owner emailed a copy of PFG's Top Vendors spreadsheet (the "Spreadsheet") for the time period of April 20, 2021 to April 20, 2022 to Greg Nelson and ASB's Business Analyst, Brandon Fischer.[1]

---

[1] The Spreadsheet can be provided to the Court for an in camera review, but due to its highly confidential nature, it is not attached as an exhibit.

60. The Spreadsheet contains invaluable information for businesses in this market. That is because it contains a column that identifies certain vendors as a Preferred Limited Partner ("PLP"), Most Valuable Preferred Limited Partner ("MVPLP"), or as Standard.

61. The identifiers indicate which vendors are PFG preferred, which has taken decades to create and determine. There are thousands of vendors in this industry, but over the years PFG has found a trusted group that is reliable and dependable.

62. A preferred vendor in this industry is synonymous with favorable pricing information, service levels, exclusive product offers, among other things.

63. The Spreadsheet also contains a rank number, the Vendor name, the purchase amount, and number of orders from each Vendor.

64. The Spreadsheet is part of the "Proforma System" subject to the confidentiality provisions in the Franchise Agreement and the Master Software Agreement.

65. This single example illustrates how ASB, a direct a competitor of PFG, with the assistance of BKEN and Brandon Kennedy, has improperly acquired access to PFG's preferred vendor list, resulting in its ability to unfairly compete with PFG through misappropriation of PFG's trade secrets. And in all likelihood, even more information was discussed on the Microsoft Teams or telephone call, which almost certainly involved discussions of the preferred pricing.

66. By improperly acquiring and using the Spreadsheet, ASB has misappropriated PFG's trade secrets, confidential information, and property.

67. This is occurring, all while ASB is shifting or attempting to shift PFG business to its own employees, franchisees, and/or affiliates.

68.     Further, by inducing or soliciting disclosure of the Spreadsheet and other trade secrets and confidential information from PFG's Franchise Owners, ASB, Brandon Kennedy, and BKEN have tortiously interfered with PFG's contractual and business relationships and have improperly induced the Franchise Owners  to breach their contractual obligations to PFG under their Franchise Agreements and/or Master Software Agreements.

69.     This is just the tip of the iceberg. PFG is currently unaware of the full extent of tortious behavior by ASB and seeks to conduct discovery to determine the full extent to which ASB has improperly acquired or used additional PFG trade secrets, confidential information, or property, and to what extent ASB, Brandon Kennedy, and BKEN have tortiously interfered with PFG's contractual or business relationships in other ways.

70.     If this amount of information is on PFG accounts, PFG can only imagine what is on personal e-mail accounts or text messages, to which it has no access.

71.     If ASB, with assistance from Brandon Kennedy and BKEN, is permitted to continue unfairly competing with PFG by acquiring and utilizing PFG's trade secrets and property, shifting business from PFG, and tortiously interfering with PFG's contractual and business relationships, PFG will not be able to regain its competitive advantage, customer relationships, Franchise Owners, and goodwill that will continue to be lost through unfair competition.

## COUNT I

## MISAPPROPRIATION OF TRADE SECRETS AGAINST ASB

72.     PFG restates and incorporates the allegations set forth in the preceding paragraphs of this Complaint.

73.     At all times relevant herein, ASB has been and is subject to the provisions of the Uniform Trade Secrets Act as adopted in Ohio.

74.     ASB requested access to PFG trade secrets, confidential information, and property, from the PFG Franchise Owner in his capacity as a PFG Franchise Owner, and ASB used this information to derive independent economic value, actual or potential, from not being generally known to, and not being readily accessible by proper means by, a person able to obtain economic value from their disclosure or use.

75.     Upon information and belief, it is not possible for PFG Franchise Owners to perform their job duties at PFG without using PFG's trade secrets, and it is inevitable that The PFG Franchise Owner and other PFG Franchise Owners disclosed or will disclose PFG's trade secrets in a role with ASB.

76.     At all times, PFG has used and continues to use efforts that are reasonable under the circumstances to maintain the secrecy of its trade secrets and confidential information including, but not limited to, restricting access to trade secrets, keeping trade secrets in locked facilities and offices, password protecting computers and electronic files, and requiring employees to execute agreements with confidentiality provisions restricting the use and disclosure of PFG's confidential information and trade secrets.

77.     PFG's trade secrets, confidential and proprietary information, including the Spreadsheet, which The PFG Franchise Owner obtained in his capacity as a PFG Franchise Owner and disclosed to ASB constitutes trade secrets as defined by the Uniform Trade Secrets Act as adopted in Ohio. Ohio R.C. §§ 1333.61-1333.69.

78.     ASB has misappropriated PFG's trade secrets by acquiring and using PFG's trade secrets for its own benefit.

79.     The misappropriation of PFG's trade secrets by ASB has been, and continues to be, willful and malicious, entitling PFG to an award of exemplary (triple) damages and attorneys' fees.

80.     The misappropriation of PFG's trade secrets by ASB has damaged PFG and unjustly enriched ASB in amounts yet to be determined.  PFG has a clearly ascertainable right to the protection of its trade secrets and will be irreparably harmed unless such activities are enjoined by the Court.

## COUNT II

## TORTIOUS INTERFERENCE WITH BUSINESS/CONTRACTUAL RELATIONS AGAINST BRANDON KENNEDY, BKEN, AND ASB

81.     PFG restates and incorporates the allegations set forth in the preceding paragraphs of this Complaint.

82.     PFG enters into contracts with its Franchise Owners through its Franchise Agreement.

83.     Brandon Kennedy and BKEN were aware of PFG Franchise Owners' Agreements with PFG, which include confidentiality provisions and competition covenants.

84.     Upon information and belief, ASB was aware of PFG Franchise Owners' Agreements with PFG, which included confidentiality provisions and competition covenants.

85.     Upon information and belief, Brandon Kennedy, BKEN, and ASB induced The PFG Franchise Owner to breach the confidentiality provisions of his Franchise Agreement and Master Software Agreement with PFG and to violate Ohio's Uniform Trade Secrets Act.

86.     Upon information and belief, Brandon Kennedy, BKEN, and ASB have induced or have attempted to induce PFG Franchise Owners to breach the covenant provision of their Franchise Agreement and/or Master Software Agreement with PFG.

87. Brandon Kennedy, BKEN, and ASB's actions constitute intentional and improper interference with PFG's existing contractual relationships with its Franchise Owners. Upon information and belief, Brandon Kennedy and BKEN profited or benefitted from their actions.

88. Brandon Kennedy, BKEN, and ASB are aware of existing purchase orders and contracts that PFG Franchise Owners have with PFG customers.

89. Upon information and belief, Brandon Kennedy, BKEN, and ASB, while using PFG's trade secrets, confidential information, and property, improperly solicited or intend to solicit those customers and induce them to breach their purchase orders and contracts with PFG. Brandon Kennedy, BKEN, and ASB's actions constitute intentional and improper interference with PFG's existing contractual relationships with its customers.

90. Brandon Kennedy, BKEN, and ASB's actions in soliciting or intending to solicit PFG's customers while using PFG's trade secrets, confidential information, and property and in violation of the PFG Franchise Owner's agreements with PFG constitute intentional and improper interference with PFG's business/contractual relations with its customers.

91. None of the acts of Brandon Kennedy, BKEN, and ASB described above were privileged or supported by any legitimate business purpose, and all such acts were designed with a purpose to harm and injure PFG and benefit Brandon Kennedy, BKEN, and ASB.

92. Brandon Kennedy, BKEN, and ASB's actions were done willfully, maliciously and with wanton and reckless disregard of the rights of others, entitling PFG to an award of punitive damages.

93. As a result of Brandon Kennedy, BKEN, and ASB's tortious interference with the business/contractual relations of PFG, PFG has been damaged and Brandon Kennedy, BKEN,

and ASB have been unjustly enriched in amounts yet to be determined. PFG will be irreparably harmed unless such activities are enjoined by the Court.

## COUNT III

## CIVIL CONSPIRACY AGAINST BRANDON KENNEDY, BKEN, AND ASB

94.     PFG restates and incorporates the allegations set forth in the preceding paragraphs of this Complaint.

95.     Upon information and belief, Brandon Kennedy, BKEN, and ASB were at all relevant times acting by agreement, in concert, and/or combination in order to unlawfully and tortiously interfere with PFG's contractual and business relationships.

96.     Upon information and belief, Brandon Kennedy, BKEN, and ASB acted in agreement, in concert, and/or in combination to tortiously interfere with PFG's contracts with its Franchise Owners, to contact current PFG Franchise Owners, and to induce PFG's Franchise Owners to breach their Franchise Agreement and/or Master Software Agreement with PFG, to the detriment of PFG.

97.     Upon information and belief, Brandon Kennedy, BKEN, and ASB acted in agreement, in  concert, and/or in combination and did contact current PFG Franchise Owners and induce them to breach their Franchise Agreement and/or Master Software Agreement with PFG, to the detriment of PFG.

98.     Upon information and belief, Brandon Kennedy, BKEN, and ASB acted in agreement, in concert, and/or in combination to solicit PFG customers and induce them to breach their purchase orders and contracts with PFG. Brandon Kennedy, BKEN, and ASB's actions constitute intentional and improper interference with PFG's existing contractual relationships with its customers.

99.    Brandon Kennedy, BKEN, and ASB's actions in conspiring to solicit PFG's customers while using PFG's trade secrets, confidential information, and property and in violation of the PFG Franchise Owner's agreements with PFG constitute intentional and improper interference with PFG's business/contractual relations with its customers.

100.    Brandon Kennedy, BKEN, and ASB engaged in unlawful acts by tortiously interfering with PFG's contractual and business relationships.

101.    Brandon C. Kennedy and ASB acted with actual or implied malice towards PFG and their conduct is and was aggravated and egregious justifying punitive damages.

102.    As a result of these unlawful acts, PFG has been damaged and Brandon Kennedy, BKEN, and ASB have been unjustly enriched in amounts yet to be determined.

## COUNT IV

## UNFAIR COMPETITION AGAINST BRANDON KENNEDY, BKEN, AND ASB

103.    PFG restates and incorporates the allegations set forth in the preceding paragraphs of this Complaint.

104.    Brandon Kennedy, BKEN, and ASB have engaged in unfair competition with PFG by tortiously interfering with PFG's business and contractual relationships and entering into competition with PFG using PFG's trade secrets, confidential information, and property to circumvent the requirements of capital, knowledge, and expertise needed for lawful competition.

105.    Brandon Kennedy, BKEN, and ASB engaged in the unfair competition described above willfully, maliciously, and with wanton and reckless disregard of the rights of others, entitling PFG to an award of punitive damages.

106.    The unfair competition has damaged PFG and unjustly enriched Brandon Kennedy, BKEN, and ASB in amounts yet to be determined. PFG will be irreparably harmed unless Brandon Kennedy, BKEN, and ASB's unfair competition is enjoined by the courts.

## COUNT V
## REPLEVIN AGAINST ASB

107.    PFG restates and incorporates the allegations set forth in the preceding paragraphs of this Complaint.

108.    PFG has title to and is entitled to immediate possession of personal property owned by PFG, including without limitation all hard and electronic copies of documents and electronically stored information that are in the possession of ASB. ASB has wrongful possession of and wrongfully detained the personal property of PFG.

109.    ASB's wrongful possession of and wrongful detention of the personal property of PFG has caused PFG to be damaged and ASB to be unjustly enriched in amounts yet to be determined. PFG will be irreparably harmed unless such wrongful possession and wrongful detention of the personal property are enjoined by the Court.

110.    ASB's wrongful possession of PFG's personal property was done willfully, maliciously and with wanton and reckless disregard of the rights others, entitling PFG to an award of punitive damages.

## COUNT VI —
## BREACH OF CONTRACT AGAINST BRANDON KENNEDY, CHRISTINA KENNEDY AND BKEN

111.    PFG restates and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

112.    PFG has performed all the obligations required of it pursuant to the 2014 Franchise Agreement.

113.    BKEN is in default of its obligations under the terms of the 2014 Franchise Agreement for its failure to pay the Account Acquisition Fee.

114. PFG has incurred and will continue to incur costs, including court costs and reasonable attorney's fees, in enforcing the terms of the 2014 Franchise Agreement through this action.

115. PFG has been damaged by the non-payment of the Account Acquisition Fee by BKEN in an amount to be proven at trial, plus the fees and costs incurred by PFG.

116. Guarantors, through the 2021 Guaranties, each guaranteed BKEN's full performance of the 2014 Franchise Agreement.

117. Guarantors are in default of their obligations to PFG under the terms of the 2021 Guaranties for their failure to pay the Account Acquisition Fee in an amount to be proven at trial.

118. As a result, Guarantors were barred from contacting for the purpose of selling any product or service similar to PFG's products or services, any person or organization which was, at any time during the two-year period prior to the termination of the 2014 Franchise Agreement, a customer they sold products or services to for one year following the termination of the agreement. Additionally, Guarantors were barred from contacting any PFG vendor or supplier of PFG for the purpose of buying products or services on behalf of a third party.

119. Upon information and belief, Brandon Kennedy and Christina Kennedy, individually or through BKEN or ASB, contacted PFG customers for purposes of offering BKEN products or services. Additionally, upon information and belief, Brandon Kennedy and Christina Kennedy, individually or through BKEN or ASB, contacted PFG vendors for purposes of buying products or services for BKEN or ASB. This failure constitutes a breach of the 2014 Franchise Agreement.

120. All indebtedness that Guarantors owe under the 2021 Guaranties is currently due and owing to PFG.

121.    Pursuant to the terms of the 2021 Guaranties, Guarantors jointly and severally promised to pay PFG for all costs that it incurs in collecting the sums due under the 2021 Guaranties and under the 2014 Franchise Agreement, including, without limitation, reasonable attorneys' fees and costs.

122.    PFG has incurred and will continue to incur costs, including court costs and reasonable attorney's fees, in enforcing the terms of the 2021 Guaranties and the 2014 Franchise Agreement through this action.

123.    Guarantors are indebted to PFG, jointly and severally, in an amount to be proven at trial, plus the fees and costs incurred by PFG.

WHEREFORE, Plaintiff PFG Ventures, L.P. respectfully requests that judgment be entered in its favor against Defendants BKEN, Inc., Brandon C. Kennedy, Christina L. Kennedy, and American Solutions for Business, Inc. as follows:

a.    A preliminary and permanent injunction enjoining ASB and its related affiliates BKEN, Inc., d/b/a/ BrandCo. Marketing, Brandon C. Kennedy, and any officers, agents, employees, directors, officers, representatives, successors, predecessors, affiliates, independent contractors, franchisees, or any other persons acting on behalf of ASB or a related affiliate (collectively "Defendants") from acquiring, using, or disclosing PFG's property, including, but not limited to, vendor lists, customer lists, data, pricing information, marketing, technology or business development systems;

b.    A preliminary and permanent injunction ordering the return of all of PFG's property, including all hard copies and electronically stored information (without Defendants retaining any copies), including, but not limited to, PFG's vendor lists, customer lists, data, pricing information, marketing, technology or business development systems

c.    Defendants are restrained and ordered to cease inducing PFG Franchise Owners to breach agreements with PFG;

d.    A preliminary and permanent injunction barring ASB from interfering with PFG's contracts and business with its current and former Franchise Owners, customers, and vendors;

e.     A preliminary and permanent injunction against Defendants BKEN, Brandon Kennedy and any officers, agents, employees, directors, representatives, successors, predecessors, affiliates, independent contractors, franchisees, or any other persons acting on their behalf are ordered to cease contacting PFG's customers for the purpose of selling any products or service offered by PFG and vendors or suppliers for the purpose of buying any products or services on behalf of any third party as it is a violation of the covenants set forth in Paragraph 11 of the 2014 Franchise Agreement with PFG

f.     A judgment against Defendants in an amount in excess of $75,000 for all damages caused by their misappropriation of trade secrets, confidential information, and property, tortious interference with business/contractual relations, and unfair competition, in an amount to be proven at trial;

g.     Exemplary (triple) damages for ASB's willful and malicious misappropriation of PFG's trade secrets;

h.     Punitive damages;

i.     PFG's reasonable attorneys' fees;

j.     Pre-judgment and post-judgment interest; and

k.     Such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Chelsea Mikula
Chelsea Mikula (0086453)
Ariana Bernard (0100001)
Thomas R. Simmons (0062422)
Christine M. Snyder (0086788)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Tel:     216.592.5000
Fax:     216.592.5009
E-mail:  chelsea.mikula@tuckerellis.com
         ariana.bernard@tuckerellis.com
         thomas.simmons@tuckerellis.com
         christine.snyder@tuckerellis.com

*Attorneys for Plaintiff PFG Ventures, L.P.*

STATE OF OHIO                )       **VERIFICATION**
                                   ) SS.
CUYAHOGA COUNTY      )

I, Vera Muzillo, being first duly sworn, depose and state that I am the CEO for Plaintiff PFG Ventures, L.P.; that I am familiar with the facts referred to in this Verified Complaint; that I have read the allegations and facts contained in this Verified Complaint; and that said facts and allegations are true to the best of my knowledge. In addition, I depose and state that because certain acts and conduct of the Defendant named herein are continuing, Plaintiff PFG Ventures, L.P. will suffer irreparable injury, loss and damage in the absence of a temporary restraining order and preliminary injunctive relief pending the trial of this case.

_____
Vera Muzillo

SWORN TO BEFORE ME and subscribed in my presence this 29th day of June, 2022.

MARTINA WYATT
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires On
November 25, 2027

_____
Notary Public

27